UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| FRANK QUINTON GAITOR, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 2:11-CR-35 |
| | ) No. 2:15-CV-269 |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

MEMORANDUM OPINION

This matter is before the Court on the "Motion To Vacate, Set Aside, Or Correct A Sentence Pursuant to 28 U.S.C. § 2255," [Doc. 122],[1] filed by Frank Gaitor ("Gaitor" or "petitioner"). The United States has responded in opposition, [Doc. 126]. On June 16, 2017, the petitioner filed a motion to appoint counsel to determine whether he had "a claim due to the *Mathis* ruling." [Doc. 131]. This motion was granted in part and denied in part by this Court: the Court declined to appoint counsel as no evidentiary hearing had been scheduled in the case, and "liberally construe[d] this motion as a supplement to Petitioner's § 2255 motion that seeks relief under *Mathis* for the reasons set forth therein." [Doc. 132]. The government responded in opposition, claiming petitioner is not entitled to relief. [Doc. 133]. Therefore, this memorandum opinion will address petitioner's arguments from his original filing, and examine his claim under *Mathis v. United States*, 136 S. Ct. 2243 (2016).

The matter is now ripe for disposition. The Court has determined that the files and records in the case conclusively establish that the petitioner is not entitled to relief under § 2255 and,

---

[1] All references are to docket entries in Case No. 2:11-CR-35 unless otherwise indicated.

1

therefore, no evidentiary hearing is necessary. For the reasons which follow, the petitioner's § 2255 motion lacks merit, and the motion will be **DENIED**.

I.     **Procedural and Factual Background**

A sealed indictment was filed on April 12, 2011, [Doc. 1], charging Gaitor and his co-defendant, Myoka Michelle Ingram ("Ingram") with conspiracy to distribute and possess with the intent to distribute 28 grams or more of cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B) (Count One), and aiding and abetting each other in the distribution of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count Two). Gaitor was also charged with the distribution of a quantity of a mixture and substance containing a detectable amount of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) on seven identified occasions (Counts Three – Nine).

On August 18, 2011, counsel for petitioner filed a motion to withdraw as counsel, as a conflict of interest had arisen that would prevent him from representing petitioner. [Doc. 26]. This motion was granted, [Doc. 29], and another attorney was appointed to represent petitioner. However, petitioner filed a *pro se* motion to appoint new counsel on October 5, 2011, [Doc. 45], and a hearing was held to consider the motion on October 7, 2011. This Court granted petitioner's motion and appointed a new attorney. [Doc. 47]. On October 12, 2011, the Grand Jury returned a Nine-Count superseding indictment as to Gaitor and Ingram. [Doc. 48]. The superseding indictment was nearly identical to the original indictment, but included a longer time frame in the conspiracy charge in Count One: the date listed as the beginning date for the conspiracy was expanded from December 28, 2010, [Doc. 1], to September 2010. [Doc. 48]. Petitioner was never arraigned on the superseding indictment.

On November 27, 2011, counsel for the petitioner filed both a motion to withdraw as

attorney at the direction of the petitioner, [Doc. 53], and a signed plea agreement. [Doc. 56]. This Court held a hearing on November 29, 2011, the day before the petitioner's trial. At the hearing, the petitioner orally withdrew his request to remove his attorney, and expressed an intention to plead guilty rather than proceed to trial. [Doc. 107]. After a lengthy plea colloquy, the defendant pled guilty to Count One of the indictment, with the other Counts dismissed by the government. Sentencing proceedings were held on May 31, 2012. Petitioner was sentenced to 188 months imprisonment followed by a 12-year term of supervised release. [Doc. 86]. Petitioner timely appealed. [Doc. 88]. On direct appeal, petitioner raised the following arguments:

> 1) The district court failed to recognize its ability to depart downward on the basis that Gaitor's criminal history category over-represented his prior crimes; 2) the government filed a notice to enhance sentence pursuant to 21 U.S.C. § 851, in violation of the parties' plea agreement; 3) the career offended designation resulted in a disparate sentence; 4) the court used a prior conviction that no longer qualifies as a controlled substance offense for career offender purposes; 5) his sentence, under the career offender provision, was the result of impermissible double-counting; and 6) his sentence is substantively unreasonable.

[Doc. 114]. The Sixth Circuit rejected these arguments, and found that petitioner's guilty plea, including a valid appellate waiver, was knowing and voluntary. [*Id*. "Given the district court's colloquy, the validity of Gaitor's plea cannot be challenged in good faith."]. Petitioner filed a writ of *certiorari*, which was denied by the U.S. Supreme Court on October 8, 2014. [Doc. 117]. Petitioner filed his § 2255 motion on October 2, 2015. [Doc. 122].[2]

## II. Standard of Review

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise

---

[2] The government argues that petitioner's § 2255 motion is untimely because of his failure to timely file his petition for *certiorari*. [Doc. 126]. However, the U.S. Supreme Court granted petitioner a filing extension, considered the petitioner's writ of *certiorari*, and ultimately denied it on October 8, 2014. [Doc. 117]. Petitioner filed his § 2255 motion on October 2, 2015, within a year of the denial of *certiorari*, and therefore, his motion is timely.

3

open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack. . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996). To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir. 1978), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996), *cert. denied*, 517

U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

Claims other than those of ineffective assistance of counsel are procedurally defaulted if not raised on direct appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001). "In the case where the defendant has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). *See also Bousley*, 523 U.S. at 622-23. This hurdle a petitioner faces to excuse procedural default is "intentionally high[,]… for respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). Further, federal inmates are not entitled to relitigate claims that were raised and considered on direct appeal absent an intervening change in the law, or other such extraordinary circumstance. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999).

### III. Analysis and Discussion

Pursuant to his plea agreement, the petitioner has explicitly waived the right to file a § 2255 motion, except for claims of ineffective assistance of counsel or prosecutorial misconduct not known to him by the time of the entry of judgment. [Doc. 56, ¶ 15(b)]. The shortcomings of counsel about which the petitioner complains would have been known by him before the entry of judgment. A defendant may waive any right, even a constitutional right, if he does so knowingly and voluntarily, and that a waiver provision in a plea agreement is enforceable. *See United States*

*v. Fleming*, 239 F.3d 761, 263-64 (6th Cir. 2001); *United States v. Ashe*, 47 F.3d 770, 775-76 (6th Cir. 1995). "[A] defendant's informed and voluntary waiver of the right to collaterally attack a conviction and sentence is enforceable." *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007); *accord Davila v. United States*, 258 F.3d 448, 450-52 (6th Cir. 2001); *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999). Here, because petitioner knowingly and voluntarily waived his right to file a § 2255 motion with few exceptions, and these claims do not fall within one of those exceptions, these claims have been waived. Nonetheless, the Court will address the merits.

Petitioner raises the following grounds for relief in his § 2255 motion:

Ground One: Whether this Court must vacate the petitioner's plea to Count One of the 'original indictment' in light of the fact that the Court issued a superseding indictment prior to the guilty plea which the petitioner was never arraigned on in violation of due process?

Ground Two: The defense counsel was ineffective for failing to file an appeal of the issues as requested upon the petitioner's claim that the plea was to be placed under advisement pending the receipt of the PSR and thereby could not be accepted at the change of plea hearing[.]

Ground Three: Counsel was ineffective during plea negotiations and unprepared for the potential trial and plea proceedings[.]

Ground Four: Attorney was ineffective by not asking the Court to address the Motion to Withdraw filed.

Ground Five: Attorney failed to appeal the disparity in sentencing between Defendant and Co-Defendant.

Ground Six: Whether the government breached the plea agreement when the government sought an § 851 enhancement after stipulating that the government would not seek the enhancement?

Finally, petitioner supplemented his motion to "add the *Mathis* ruling to [his] pending 2255 that was filed." [Doc. 131]. Each of these grounds will be addressed in turn below:

***Ground One: Due Process Violation***

Petitioner argues that "the Court and the government erred in allowing him to plead guilty to Count One of the original indictment after obtaining a 'superseding' indictment[,] thereby nullifying/voiding the original indictment." [Doc. 122]. He further argues that "the failure to arraign the petitioner on the superseding indictment violates his Fifth and Sixth Amendment rights to due process and notice of charges." [*Id.*]. The government, however, argues that petitioner was aware of the existence of the superseding indictment before he pled guilty, and agreed that he wished to plead guilty to the original indictment. [Doc. 126]. The government further states that both indictments include the same substantive charges, with the only difference being an expanded date range during which the conspiracy took place, and argues that petitioner cannot demonstrate that he suffered prejudice. [*Id.*].

> It is clear that this matter was discussed at petitioner's change of plea hearing:
>
> Mr. Smith: One thing, and I apologize, and I don't know if this is even an issue or not, there was a superseding indictment returned on October 12, which did not substantively change any charges. Mr. Gaitor has never been rearraigned on that superseding indictment. I don't even know if it's necessary since it didn't substantively change the charges; but to the extent it did make a change and extend the period of the conspiracy in Count 1 by a couple of months. I just want to bring that to the Court's attention in case that's anything we need to address.
>
> The Court: Well, this plea agreement says he's pleading guilty to the indictment, not the superseding indictment.
>
> Mr. Smith: I realize that right now, so it really makes no different as far as the penalties or the evidence presented that supports the plea.
>
> The Court: …[T]he stipulation of facts in this plea agreement stipulates a conspiracy between December 28, 2010 and March 9, 2011. It seems to me that was the period in the original.
>
> Mr. Smith: That was in the original because I just took the plea agreement that had been sent to Mr. Moore and then Mr. Bowman; so we agree with that, your honor, we're good to go.
>
> The Court: I'm satisfied that he can plead to Count 1 of the original indictment[.] … There's been a lot of discussion among the judges in the District recently about

7

> the effect of superseding indictment on a previously pending indictment. I think, I think the answer to that is that both of them are viable documents. … I mean, the superseding indictment doesn't render the original indictment moot[.]
>
> Mr. Smith: Yes, your honor. Well, I think as long as we put ion the record that we've considered it and it's – was a conscious decision as opposed to an oversight that he is pleading guilty to Count 1 of the original indictment.
>
> The Court: All right. And during the break if you and Mr. Lloyd would confer about that further, I don't think there's an issue there[.] …

[Doc. 107 at 6-8]. This discussion took place at the outset of petitioner's change of plea hearing; it is clear that the petitioner had full knowledge of the presence and effect (or lack thereof) of the superseding indictment, yet agreed to plead guilty to Count One of the original indictment. In fact, later during the petitioner's plea colloquy, the petitioner confirmed that he understood that the "superseding indictment is simply a nullity." [*Id*. at 14-15].

Though petitioner was aware of this during his plea colloquy, sentencing, and direct appeal, he failed to raise this argument in his direct appeal to the Sixth Circuit. It is clear, then, that this issue has been procedurally defaulted by petitioner's failure to raise it on direct appeal. He does not attempt to make a showing in his § 2255 motion of good cause for failure to raise the issue on direct appeal, nor can he demonstrate that he was prejudiced by the presence of a superseding indictment, as he did not plead guilty to any of the charges therein, and any changes made between indictments would have had no impact on his sentence anyway. Therefore, this argument, raised for this first time in petitioner's collateral attack, is procedurally defaulted and improper.

Further, the weight of authority indicates that a superseding indictment does not invalidate an original indictment, but that both documents remain valid. *See United States v. Obi*, 85 Fed. App'x 440, 444 (6th Cir. 2003) (rejecting defendant's argument that his prosecution under the original indictment after the government obtained a superseding indictment was in violation of due process); *United States v. Bowen*, 946 F.2d 734, 736 (10th Cir. 1991) (finding "no authority which

8

supports the proposition that a superseding indictment zaps an earlier indictment to the end that the earlier indictment somehow vanishes into thin air."); *United States v. Cerilli*, 558 F.2d 697, 700 n.3 (3rd Cir. 1977) ("As we understand it, there are two pending indictments against the defendants, and the government may select one of them with which to proceed to trial."). For these reasons, petitioner's claim that the superseding indictment rendered his plea to the original indictment invalid is without merit.

### *Grounds Two – Five: Ineffective Assistance of Counsel*

Petitioner makes several arguments that the attorney representing him at the time of sentencing was ineffective. The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland* 466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires that petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

### a.) Grounds Two and Five: Failure to Appeal

Petitioner's second ground for relief states that his counsel failed to appeal petitioner's plea to the original indictment and the calculation of his guideline range, which he argues was in error. [Doc. 122 at 5]. Additionally, in ground five, petitioner argues that counsel "failed to appeal the disparity in sentencing between Defendant and Co-Defendant." [*Id*. at 9]. The government argues that because petitioner has previously raised his right to appeal, counsel was not deficient for failing to raise arguments on appeal that were barred by the waiver. [Doc. 126]. In response to Gaitor's *pro se* direct appeal, the Sixth Circuit found that he had indeed entered into an enforceable appellate waiver:

> Not only was Gaitor's guilty plea valid, but the record also demonstrates that his plea agreement contained a valid appellate waiver. … As discussed above, the district court specifically addressed Gaitor's appellate waiver at his plea hearing, affirming that counsel had explained his appellate rights. Gaitor stated that he had read the waiver provision, discussed it with counsel, and counsel answered all the questions Gaitor had about the provision. Gaitor averred that he fully understood the rights he was giving up by agreeing to the appellate waiver. Because Gaitor's plea colloquy demonstrates that he voluntarily and knowingly waived his rights to appeal, and because the district court ultimately imposed a sentence of 188 months – within the sentencing guidelines range – Gaitor's appellate waiver is valid and precludes [the Sixth Circuit] from reviewing his sentence.

[Doc. 114 at 5].

In his plea agreement, petitioner explicitly waived his right to appeal when pleading guilty, unless he received a sentence "above the sentencing guideline range . . . determined by the district court." [Doc. 56, ¶ 15(a)]. His sentence was below the range determined by the district court, so this provision would have barred any appeal. If counsel had filed an appeal regarding petitioner's sentence, the United States would have filed a motion to dismiss based on the appellate-waiver provision in the plea agreement, and such a motion would likely have been granted. *See, e.g., United States v. Sharp*, 442 F.3d 946, 949-52 (6th Cir. 2006) (dismissing an appeal where the defendant had waived the right to appeal when he pleaded guilty). Further, petitioner is not

11

entitled to relitigate claims that he raised on direct appeal absent an intervening change in the law, or other such extraordinary circumstance. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999).

Therefore, because petitioner entered into a knowing and voluntary plea agreement which included a valid appellate waiver, counsel cannot be faulted for failing to raise issues on appeal that the Sixth Circuit was precluded from considering.

### b.) Ground Three: Voluntariness of Plea

Petitioner argues that his defense counsel was ineffective during his plea negotiations by failing to inform him of a prior plea agreement and allowing him to plead guilty when he "did not fully understand the proceedings." [Doc. 122]. Petitioner argues that his plea was "clearly unintelligent and involuntary." [*Id.*]. The government argues that the record contradicts the petitioner's claims: "[t]he written plea agreement under which petitioner pleaded guilty was the government's initial (and best) plea offer, and petitioner's sworn statements during the plea colloquy demonstrate that he understood the proceedings, that he was satisfied with counsel's representation, and that his plea was knowing and voluntary." [Doc. 126].

The government's argument is supported by the Sixth Circuit's opinion on petitioner's direct appeal, which found that "there is no non-frivolous issue that could be raised in connection with Gaitor's guilty plea." [Doc. 114].

> Having observed Gaitor during the plea colloquy, the district court concluded that Gaitor was competent to enter a plea, he understood the nature of the crime charged, and that his plea was made knowingly and voluntarily. The district court, therefore, accepted Gaitor's plea and adjudged him guilty. Given the district court's colloquy, the validity of Gaitor's guilty plea cannot be challenged in good faith.

[*Id.* at 4]. Further, a finding that petitioner's plea was knowing and voluntary is supported by the record of the change of plea hearing, which included the following statements by petitioner:

12

The Court: Do you want me to relax the rule on the filing of the plea agreement and allow you to plead guilty pursuant to this plea agreement this afternoon?

The Defendant: Yes sir, please.

The Court: Well, one of the things I'm going to ask you if I do that, Mr. Gaitor, is whether or not you are satisfied with the representation that's been afforded to you by Mr. Lloyd. You have written a letter that's been filed with the Court under seal here where you make some fairly significant criticisms of Mr. Lloyd's preparation for trial and his representation of you in this case. Are you now satisfied with the representation you've been provided?

The Defendant: Yes, sir.

The Court: Have you any complaints at all?

The Defendant: No. He … got me a plea agreement.

The Court: I understand he got you a plea agreement, but I don't want to be confronted a year from now with a petition from you saying that you were unhappy, that you were forced to enter in to this plea agreement or anything of that sort. Are you doing this because it is your decision to do it?

The Defendant: Yes, sir.

…

The Court: Now, Mr. Gaitor, I've been handed a plea agreement that purports to have your signature here. Have you read this plea agreement?

The Defendant: Yes, sir.

The Court: Have you read it carefully?

The Defendant: Yes, sir.

The Court: Has your attorney explained to you all the terms and conditions of the plea agreement you've entered into with the government?

The Defendant: Yes, sir.

The Court: Do you fully understand all the terms and conditions of this agreement you've made with the government?

The Defendant: Yes, sir.

> …
>
> The Court: In other words, Mr. Gaitor, is it your free and voluntary decision to enter a plea of guilty here this afternoon?
>
> The Defendant: Yes, sir.

[Doc. 107 at 3-4, 16-17, 21].

During the change of plea hearing, petitioner acknowledged, under oath, that counsel had given him the advice which petitioner now asserts that he did not give. [Doc. 107 at 5, 12-14]. Petitioner acknowledged that he had received and read a copy of the indictment. [*Id*. at 12]. But even absent this acknowledgment, this Court informed him of the nature and consequences of his guilty plea [*Id.* at 15-20, 29-37]. Furthermore, after receiving this information from the Court, petitioner persisted in pleading guilty and did not move to withdraw his guilty plea. [*Id*. at 28]. *See Baker v. United States*, 781 F.3d 85, 92 (6th Cir. 1986) (finding a plea valid where a petitioner "consented in open court to the terms of the plea agreement,[] understood the consequences of his guilty plea, and [] consciously chose to plead rather than to go to trial").

The Court complied with Rule 11 requirements that a defendant be informed of "the terms of any plea agreement provision waiving the right to appeal or to collaterally attack the sentence" and that it determine whether a defendant understands those terms. Fed. R. Crim. P. 11(b)(1)(N). Petitioner's conclusory and factually undeveloped allegation that his plea is invalid because counsel did not adequately advise him of the nature and consequences of his guilty plea is rejected based on the plea colloquy transcript.

### c.) Ground Four: Failure to Address Motion to Withdraw

Petitioner's next ground for relief states that his attorney was ineffective "by not asking the Court to address the Motion to Withdraw filed." [Doc. 122 at 9]. Petitioner here refers to a motion filed two days before his change of plea hearing, in which petitioner's counsel states that "Mr.

14

Gaitor instructed undersigned counsel to file a motion for leave to withdraw." [Doc. 53]. The petitioner argues that the Court never addressed this motion. Again, however, based on a review of the transcript from petitioner's change of plea hearing, this statement is factually incorrect:

> The Court: You have told me that you are satisfied with the representation provided to you by your attorney. The reason this hearing this afternoon was originally scheduled was because Mr. Lloyd had filed a motion seeking leave of this Court to withdraw as your counsel, attached to that motion was a document which I permitted to be filed under seal in which you expressed dissatisfaction with your attorney. Based on what you've told me earlier, I take it you and Mr. Lloyd have now worked out any disagreements that you might have about this case and that you have no dissatisfaction with the way he's represented you?
>
> The Defendant: No, sir.
>
> The Court: Do you consent then to the withdrawal of his motion for leave to withdraw as your attorney?
>
> The Defendant: Please. Yes, sir.
>
> The Court: And you want him to continue to represent you?
>
> The Defendant: Yes, sir.

[Doc. 107 at 18]. It is clear that the Court fully addressed the motion to withdraw at the petitioner's change of plea hearing, and that the petitioner himself consented to the withdrawal of that motion. Therefore, counsel cannot be said to have acted unreasonably in regards to this allegation. Petitioner's argument on ground four is without merit.

### *Ground Six: Prosecutorial Misconduct – Enhancement under 21 U.S.C. § 851*

Petitioner argues that "the government breached the plea agreement in filing an § 851 enhancement notice after stipulating that the government would not seek such enhancement in exchange for the defendant's plea agreement." [Doc. 122]. Petitioner also states that he could not raise this claim on direct appeal in light of his appellate waiver. [*Id.*].[3] The government argues

---

[3] Petitioner did indeed attempt to raise this issue on direct appeal, though the Sixth Circuit found that the argument was precluded by his valid appellate waiver. [Doc. 114]. Therefore, petitioner is not entitled to relitigate an issue he

15

that the record indicates that "the § 851 notice was filed well before petitioner pleaded guilty, and petitioner acknowledged, during the plea colloquy, that he would be subject to an enhanced statutory penalty[.]" [Doc. 126]. The government further argues that petitioner's sentence was not based on the mandatory minimum required by the § 851 enhancement, but was instead increased by his classification as a career offender pursuant to U.S.S.G. § 4B1.1. [*Id.*].

An examination of the record disproves petitioner's claims. The government filed its notice of intent to seek increased punishment pursuant to 21 U.S.C. § 851(a)(1) on September 29, 2011, [Doc. 41], nearly two months before the petitioner entered into a plea agreement with the government. Neither petitioner's plea agreement nor any other document in the record indicates that the government made a promise to petitioner not to seek such an enhancement. Indeed, the notice of enhancement was already filed when the parties came to an agreement regarding petitioner's plea. Further, the government correctly states that the petitioner's sentence was not ultimately impacted by the § 851 enhancement. Because petitioner was classified as a career offender pursuant to U.S.S.G. § 4B1.1, his offense level was increased from 26 to 37 (before acceptance of responsibility), resulting in a sentencing enhancement greater than that which would have applied under § 851. Because the record cannot support petitioner's claim, and because the enhancement ultimately did not impact his sentence, this argument is without merit.[4]

---

raised on direct appeal. Nonetheless, the Court will address the merits of petitioner's claim.

[4] In petitioner's reply, [Doc. 127], he repeats his argument that the government breached the plea agreement by filing an § 851 enhancement which resulted in an increased sentence. However, in this filing, Gaitor claims that his counsel was ineffective for failing to raise such an argument. Petitioner attached a letter to his motion from his attorney, [Doc. 127-1], which confirms that petitioner's attorney delivered copies of the file in his case, and that the petitioner "therefore had a copy of the § 851 information before [he] decided to change [his] plea." It is unclear from petitioner's argument whether he takes issue with his attorney's communication with him during the plea negotiation process, or his failure to appeal the issue on direct appeal. Either way, petitioner's claim for ineffective assistance of counsel as to the government's breach of the plea agreement is without merit. First, even if Gaitor's attorney merely provided him with files rather than explain the § 851 enhancement (an allegation not supported by the transcript of the plea colloquy), petitioner was not sentenced with such an enhancement because of his career offender status, and therefore cannot demonstrate prejudice as required under the second prong of *Strickland*. Second, as discussed above, Gaitor's attorney cannot be ineffective for failing to appeal when Gaitor agreed to a valid appellate waiver in his plea agreement.

*Ground Seven: Applicability of Mathis v. United States*

In *Mathis v. United States*, the Supreme Court held: (1) a prior conviction cannot qualify as a predicate offense under the enumerated-offense clause if an element of the crime of conviction is made broader than an element of the generic offense by way of an enumerated list of alternative factual means for satisfying a single indivisible element; and (2) Iowa's burglary statute—which defined "structure" as "any building, structure, [or] land, water, or air vehicle"—was incapable of supporting ACCA enhancement because the provision was both indivisible and overbroad. *Mathis*, 136 S. Ct. 2246, 2251–52, 2256–57 (2016). In reaching the first conclusion, the Supreme Court expressly overruled *United States v. Ozier*, 796 F.3d 597 (6th Cir. 2015). *See id.* at 2251 n.1 (noting the existence of a circuit split about whether the modified categorical approach could be used to distinguish between differing factual means of satisfying a single statutory element and reversing Sixth Circuit's decision on that issue in *Ozier*).

On June 16, 2017, petitioner filed a motion to supplement his original § 2255 filing which stated "I think I have a claim under the *Mathis* ruling being I was sentenced with the 4B1.1 career offender penalty." [Doc. 131]. The government responded in opposition, arguing that the petitioner was classified as a career offender because of his prior Tennessee drug convictions under Tennessee Code Annotated § 39-17-417, which remain proper predicate offenses for the enhancement post-*Mathis*. [Doc. 133].

At the outset the Court must note that the decision in *Mathis* is not retroactive, and therefore cannot provide relief to the petitioner.

> [C]ourts have established that the 2016 holding in *Mathis* does not apply retroactively, because *Mathis* did not create a new rule of law which applies retroactively to cases on collateral review. *See Tyler v. Cain*, 533 U.S. 656, 663 (2001) ("[A] new rule is not made retroactive to cases on collateral review unless the Supreme Court holds it to be retroactive."). The Supreme Court gave no indication in *Mathis* that it intended its holding to be applied retroactively to cases

on collateral review. *See In re Lott*, 838 F.3d 522, 523 (5th Cir. 2016) (finding that inmate "failed to make a prima facie showing that *Mathis* … set forth new rules of constitutional law that have been made retroactive to cases on collateral review."); *United States v. Taylor*, 672 F. App'x 860, 864 (10th Cir. 2016) (holding that "*Mathis* did not announce a new rule")[.]

*United States v. Gentry*, 2017 WL 4081875 at *2 (E.D. Ky. Aug. 4, 2017); *see also In re Conzelmann*, 872 F.3d 375, 377 (6th Cir. 2017) (denying an application for leave to file a second or successive § 2255 motion because "*Mathis* has not been declared retroactive by the Supreme Court.").

Regardless, the decision in *Mathis* cannot aid the petitioner in his argument that his 2006 conviction under Tennessee Code Annotated § 39-17-417 was improperly applied as a predicate offense for his career offender status. Post-*Mathis*, the Sixth Circuit has continued to hold that a conviction under Tennessee Code Annotated § 39-17-417 is a controlled substance offense for purposes of the career offender guideline calculation. *See United States v. Alexander*, 686 Fed. App'x 326, 328 (6th Cir. 2017). The 2014 sentencing guidelines, which were used to determine the defendant's offense level at the time of sentencing, define the term "controlled substance offense" as:

> [A]n offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of controlled substance (or counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

USSG § 4B1.2(b). Tennessee Code Annotated § 39-17-417(a)(1)-(4) makes it illegal to manufacture, deliver, sell, or possess with the intent to manufacture, deliver, or sell a controlled substance:

(a) It is an offense for a defendant to knowingly:

(1) Manufacture a controlled substance;

(2) Deliver a controlled substance;

(3) Sell a controlled substance; or

(4) Possess a controlled substance with intent to manufacture, deliver or sell the controlled substance.

T.C.A. § 39-17-417(a)(1)-(4). It is clear that the Tennessee statute in question qualifies as a controlled substance offense. *See Stone v. Butler*, 2017 WL 5618289 at *2 (E.D. Ky. Nov. 20, 2017) ("Courts have therefore consistently held that a conviction under Tennessee's controlled substances act qualifies as a valid predicate for an enhancement under 21 U.S.C. § 841(b)(1)(A)."). Therefore, petitioner's argument for relief under *Mathis* is without merit.

## IV. Conclusion

For the reasons set forth above, the Court holds petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States. Accordingly, his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, [Doc. 122], will be **DENIED** and his motion **DISMISSED**.[5]

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467.

---

[5] Subsequent to the preparation of this memorandum opinion, petitioner filed a motion to withdraw his motion to vacate under § 2255, [Doc. 135]. Nonetheless, the Court has addressed the merits of petitioner's arguments. Because this memorandum opinion and the accompanying judgment will issue, petitioner's motion, [Doc. 135], is DENIED as MOOT.

Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id*.

A certificate of appealability should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473 (2000). Having examined each of petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of his claims was debatable or wrong. Therefore, the Court will **DENY** a certificate of appealability.

A separate judgment will enter.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
